# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

TRINA D. F.,[1]                                6:20-cv-01351-BR

       Plaintiff,                     OPINION AND ORDER

v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

**JOHN E. HAAPALA, JR.**
401 E. 10th Ave, Ste. 240
Eugene, OR 97401
(541) 345-8474

       Attorney for Plaintiff

**SCOTT ERIK ASPHAUG**
Acting United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
(503) 727-1003

---

    [1] In the interest of privacy this Court uses only the first
name and the initial of the last name of the nongovernmental
party in this case. Where applicable, this Court uses the same
designation for the nongovernmental party's immediate family
member.

1 - OPINION AND ORDER

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**KATHERINE B. WATSON**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2139

       Attorneys for Defendant

**BROWN, Senior Judge.**

Plaintiff Trina D. F. seeks judicial review of the final decision of the Commissioner of the Social Security Administration (SSA) in which the Commissioner denied Plaintiff's applications for Disability Insurance Benefits (DIB) under Title II of the Social Security Act and Supplemental Security Income (SSI) under Title XVI of the Social Security Act. This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

For the reasons that follow, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

## ADMINISTRATIVE HISTORY

On March 12, 2018, Plaintiff protectively filed her

applications for DIB and SSI benefits.  Tr. 13, 179, 181.[2]

Plaintiff alleged a disability onset date of August 10, 2017.

Tr. 13, 179, 181.  Plaintiff's applications were denied

initially and on reconsideration.  An Administrative Law Judge

(ALJ) held a hearing on October 4, 2019.  Tr. 13, 32-57.  At the

hearing Plaintiff amended her alleged disability onset date to

March 12, 2018.  Tr. 13, 37.  Plaintiff and a vocational expert

(VE) testified at the hearing.  Plaintiff was represented by an

attorney at the hearing.

On October 29, 2019, the ALJ issued an opinion in which she

found Plaintiff is not disabled and, therefore, is not entitled

to benefits.  Tr. 13-26.  Plaintiff requested review by the

Appeals Council.  On June 18, 2020, the Appeals Council denied

Plaintiff's request to review the ALJ's decision, and the ALJ's

decision became the final decision of the Commissioner.

Tr. 1-3.  *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

On August 11, 2020, Plaintiff filed a Complaint in this

Court seeking review of the Commissioner's decision.

-------------------

[2] Citations to the official Transcript of Record (#10)
filed by the Commissioner on December 28, 2020, are referred to
as "Tr."

## **BACKGROUND**

Plaintiff was born on July 9, 1970. Tr. 24, 179. Plaintiff was 47 years old on her amended alleged disability onset date. Tr. 24. Plaintiff has at least a high-school education. Tr. 24. Plaintiff has past relevant work experience as a production/shipping/receiving clerk and auto-title clerk. Tr. 24, 245.

Plaintiff alleges disability due to ankylosis spondylitis, spinal stenosis, hypertrophic fact arthropathy, progressive chronic low-back pain with left radiculopathy, osteoarthritis with enthesopathic of the hip, chondral fissuring at the median ridge and medial patel, fibromyalgia, Post-Traumatic Stress Syndrome (PTSD), and depression. Tr. 59, 236.

Except as noted, Plaintiff does not challenge the ALJ's summary of the medical evidence. After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence. *See* Tr. 16-24.

## **STANDARDS**

The initial burden of proof rests on the claimant to establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To meet this burden a claimant must

demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). "It is more than a mere scintilla [of evidence] but less than a preponderance." *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for evaluating a claimant's testimony, resolving conflicts in the medical evidence, and

resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I. The Regulatory Sequential Evaluation

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity (SGA). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. 20 C.F.R.

§§ 404.1509, 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also* *Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations. 20 C.F.R. §§ 404.1520(e), 416.920(e). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). *See also Keyser*, 648 F.3d at 724-25. Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines (or the grids) set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since March 12, 2018, Plaintiff's amended alleged disability onset date. Tr. 16.

At Step Two the ALJ found Plaintiff has the severe impairments of PTSD, lumbar degenerative-disc disease, obesity, right-knee osteoarthritis, chondromalacia and medial meniscus tear status post-surgical repair, axial spondyloarthropathy, obstructive sleep apnea, chronic pain syndrome, mild bilateral hip osteoarthritis, migraines, and cannabis-use disorder. Tr. 16.

At Step Three the ALJ concluded Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1. Tr. 17. The ALJ found Plaintiff has the RFC to perform light work with the following limitations: can only occasionally lift and carry 20 pounds; can frequently lift and carry ten pounds; can only stand and/or walk for approximately four hours in an eight-hour workday; can only sit for approximately six hours in an eight-hour workday; cannot climb ladders, ropes, or scaffolds; can only occasionally climb stairs and ramps; can only occasionally stoop, crouch, and crawl; cannot kneel; cannot ambulate over uneven surfaces; can frequently handle and finger bilaterally; cannot perform forceful gripping such as opening jars and bottles, using wrenches, and wringing-out rags; cannot be exposed to extreme

heat, extreme cold, wetness, high humidity, atmospheric
conditions, moving mechanical parts, and high, unprotected
hazards; cannot have direct contact with the public; can only
occasionally have contact with co-workers and supervisors; can
only perform low-stress work that requires merely occasional
changes in work setting, work duties, and simple work-related
decision-making; and cannot work on a conveyor belt. Tr. 19.

At Step Four the ALJ concluded Plaintiff is unable to
perform her past relevant work. Tr. 24.

At Step Five the ALJ found Plaintiff can perform other jobs
that exist in the national economy such as electrical-
accessories assembler, electronics assembler, and hand-finisher.
Tr. 25. Accordingly, the ALJ found Plaintiff is not disabled.
Tr. 26.


## DISCUSSION

Plaintiff contends the ALJ erred when she (1) failed to
provide legally sufficient reasons for discounting Plaintiff's
symptom testimony; (2) failed to provide legally sufficient
reasons for discounting the medical opinion of Jonathan Jones,
M.D., Plaintiff's treating rheumatologist; and (3) found at Step
Five that Plaintiff could perform other work available in the

national economy.

## I.   The ALJ did not err when she discounted Plaintiff's symptom testimony.

Plaintiff contends the ALJ erred when she discounted Plaintiff's symptom testimony and did not provide legally sufficient reasons for doing so.

### A.   Standards

The ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)(quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).  The claimant need not show her "impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Garrison*, 759 F.3d at 1014 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).  A claimant is not required to produce "objective medical evidence of the pain or fatigue itself, or the severity thereof."  *Garrison*, 759 F.3d at 1014.

If the claimant satisfies the first step of this analysis and there is not any affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15. *See also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)(same). General assertions that the claimant's testimony is not credible are insufficient. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

**B.  Analysis**

Plaintiff testified she is unable to work due to pain that interferes with her ability to focus and to be on her feet. Tr. 40. Plaintiff testified her employer let her go because she was unable to get her work done in the two hours she worked and she was unable to work longer because "I get really flustered when I'm upset and then I have a hard time accomplishing my tasks and then I end up getting stuck on something else." Tr. 42-43. Plaintiff testified the pain in her hip, knee, and hands make it difficult to "focus on anything." Tr. 44. Plaintiff

testified she can sit comfortably for "usually less than half an hour," and it is difficult to stand in one place.  Tr. 44.  She also has difficulty using her hands "for any length of time." Tr. 44.  Plaintiff has difficulty sleeping at night, does not sleep more than four hours at a time, wakes up in pain, and is "tired all the time."  Tr. 46.  In a typical day she spends the first few hours pacing, walking, and stretching while "trying to feel normal."  Tr. 46.  On a good day she rests and does some household chores, and other days she is "in bed, and I just hurt."  Tr. 47.

The ALJ concluded Plaintiff's allegations regarding the intensity of her symptoms are not entirely consistent with the record.  Tr. 20.  Although the ALJ found there is evidence in the record to support "severe impairments," she concluded the "objective evidence in the record fails to support symptoms as severe as alleged."  Tr. 21.  For example, the ALJ noted the record reflects Plaintiff's hip osteoarthritis and degenerative changes in her back are described in the record as "mild," and knee imaging is also described as mostly "mild" or "mild to moderate."  Tr. 21, 639, 586-87.  Specifically, on January 9, 2018, an MRI of Plaintiff's lumbar spine showed "mild spinal stenosis," "mild multilevel disc degenerative change," and

"moderate lower lumbar hypertrophic facet arthropathy."
Tr. 585.  On June 14, 2018, Plaintiff had knee surgery.  In a
follow-up visit on June 28, 2018, Plaintiff reported she was
"doing well overall."  Tr. 347.

The ALJ also noted Plaintiff's symptoms are not
consistent with her level of activities.  Tr. 21.  For example,
although Plaintiff was still experiencing pain, she told her
treating physician on April 24, 2018, that she was "exercising
daily"; playing more with her dogs; and walking up and down
inclines, which helped with tiredness.  Tr. 374.  In addition,
the ALJ noted Plaintiff continued to work at an automobile
sales-and-repair shop as a clerk for up to ten hours a week
during her alleged disability period.  Tr. 36-38, 737.

The ALJ further noted Plaintiff's pain and symptoms
were, in part, also associated with situational stressors.
Tr. 22.  For example, on August 21, 2018, Dr. Jones, Plaintiff's
treating rheumatologist, noted "[m]uch of [Plaintiff's] current
pain is being driven by the stress of managing her father's
estate and preparing for her daughter's wedding.  As this
subsides I anticipate that she will feel more energy and less
pain."  Tr. 757.

The ALJ also found Plaintiff's treatment history did

not support her symptom allegations. Tr. 21-22. For example,
in June 2018, three months after her alleged onset date,
Plaintiff had right-knee surgery. Tr. 347. In a follow-up
examination on June 26, 2018, Daniel Stenger, P.A., noted
Plaintiff was "doing well," had only mild pain, was able to walk
and to do activities without any discomfort, and no longer
relied on Ibuprofen. Tr. 347. On July 11, 2018, Plaintiff
reported to her physical therapist that her knee was feeling "a
lot better" and that her worst pain was "2/10." Tr. 750.

On this record the Court concludes the ALJ provided
legally sufficient reasons supported by substantial evidence in
the record for discounting Plaintiff's subjective symptom
testimony.

## II. The ALJ did not err when she discounted Dr. Jones's medical opinion.

Plaintiff contends the ALJ failed to provide legally
sufficient reasons for discounting Dr. Jones's opinion.

### A. Standards

Because Plaintiff filed her application after
March 27, 2017, new regulations apply to the ALJ's evaluation of
the medical opinion evidence. *Revisions to Rules Regarding the
Evaluation of Med. Evid.*, 2017 WL 168819, 82 Fed. Reg. 5844, at
5867-68 (Jan. 18, 2017). *See also Linda F. v. Saul*, No. C20-

5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020). The
new regulations provide the Commissioner "'will not defer or
give any specific evidentiary weight, including controlling
weight, to any medical opinion[s] or prior administrative
finding(s)[.]'" *Id.*, at *2 (quoting 20 C.F.R. § 404.1520c(a)).
"A prior administrative medical finding is a finding, other than
the ultimate determination about [disability], about a medical
issue made by . . . agency medical and psychological consultants
at a prior level of review . . . in [a] claim based on their
review of the evidence." 20 C.F.R. § 404.1513(a)(5). In
addition, the new regulations rescinded SSR 06-03p in which the
Social Security Administration "explained how [it] considers
opinions and other evidence from sources who are not acceptable
medical sources. . . . The [new] rules revised [this] polic[y].
. . . For example, in claims filed on or after March 27, 2017,
the final rules state that all medical sources, not just
acceptable medical sources, can make evidence that [it]
categorize[s] and consider[s] as medical opinions." Rescission
of Soc. Sec. Rulings 96-2p, 96-5p, and 06-3p, SSR 96-2P 2017,
WL 3928298, at *1 (S.S.A. Mar. 27, 2017). In other words, the
Commissioner must consider all medical opinions and "evaluate
their persuasiveness" based on "supportability" and

"consistency" using the factors specified in the regulations.
20 C.F.R. § 404.1520c(c).  Those factors include
"supportability," "consistency," "relationship with the
claimant," "specialization," and "other factors."  *Id.*  The
factors of "supportability" and "consistency" are considered to
be "the most important factors" in the evaluation process.  *Id.*
*See also Linda F.*, 2020 WL 6544628, at *2.

        In addition, the regulations change the way the
Commissioner should articulate his consideration of medical
opinions.

>               First, we will articulate our consideration of
>               medical opinions from all medical sources
>               regardless of whether the medical source is an
>               AMS [Acceptable Medical Source].  Second, we will
>               always discuss the factors of supportability and
>               consistency because those are the most important
>               factors.  Generally, we are not required to
>               articulate how we considered the other factors
>               set forth in our rules.  However, when we find
>               that two or more medical opinions . . . about the
>               same issue are equally well-supported and
>               consistent with the record but are not exactly
>               the same, we will articulate how we considered
>               the other most persuasive factors.  Third, we
>               added guidance about when articulating our
>               consideration of the other factors is required or
>               discretionary.  Fourth, we will discuss how
>               persuasive we find a medical opinion instead of
>               giving a specific weight to it.  Finally, we
>               will discuss how we consider all of a medical
>               source's medical opinions together instead of
>               individually.

*Revisions to Rules*, 82 Fed. Reg. 5844.

17 - OPINION AND ORDER

Although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [the ALJ] considered the medical opinions" and "how persuasive [the ALJ] find[s] all of the medical opinions." 20 C.F.R. § 404.1520c(a) and (b)(1). The ALJ is required to "explain how [the ALJ] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. § 404.1520c(b)(2). "At the least, this appears to necessitate that an ALJ specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion." *Linda F.*, 2020 WL 6544628, at *2. Finally, the Court must also "continue to consider whether the ALJ's analysis has the support of substantial evidence." *Id.*, at *2 (citing 82 Fed. Reg. at 5852).

## B.   Analysis

On July 17, 2019, Dr. Jones completed an Arthritis Medical Source Statement. Tr. 742-45. Dr. Jones diagnosed Plaintiff with axial spondylo-arthritis and fibromyalgia. Tr. 742. He noted Plaintiff's symptoms included pain in multiple joints, insomnia, and chronic fatigue. Tr. 742. Dr. Jones noted Plaintiff's pain, which is sharp and

debilitating, is located in her back, shoulders, hips, knees, and hands.  Tr. 742.  Dr. Jones also opined Plaintiff can only walk two or three blocks without rest or severe pain, can only sit for 30 minutes and stand for 10 minutes for less than two hours in an eight-hour workday.  Tr. 743.  He also noted Plaintiff will need to shift positions at will from sitting, standing, and walking; to walk for ten minutes every 30 minutes during an eight-hour workday; and require unscheduled breaks for 15 minutes each hour.  Tr. 743-44.  Dr. Jones also stated: "[Plaintiff] is required to limit her activities because of the combination of joint pain, the profound fatigue which is worsened by insomnia, and the depression and anxiety amplify these symptoms.  I agree that she is unable to work at this time."  Tr. 809.

    The ALJ found Dr. Jones's opinion unpersuasive on the ground that it is inconsistent and not supported by the record. Tr. 23.  The ALJ noted Dr. Jones relied "very heavily" on Plaintiff's subjective statements regarding her abilities. Tr. 23.  The ALJ also concluded there was not any evidence in the medical record to support the limitations found by Dr. Jones.  Tr. 23.  For example, on August 21, 2018, Dr. Jones noted Plaintiff had full range of motion in her shoulders,

elbows, wrists, and knees and did not have swelling in her
wrists, hands, ankles, or pain in her feet.  Tr. 757.
Dr. Jones made similar findings on November 27, 2018;
January 28, 2019; April 30, 2019; June 25, 2019; July 17, 2019;
and September 17, 2019.  Tr. 766, 771, 790, 803, 808, 839.

The ALJ also found unpersuasive Dr. Jones's statement
that Plaintiff is unable to work on the ground that this is an
issue reserved for the Commissioner.  See 20 C.F.R.
§§ 404.1520b(c), 416.920b(c)(The ALJ is not required to provide
any analysis for statements that a claimant is unable to work
because such statements are "neither valuable nor persuasive.").

On this record the Court concludes the ALJ did not err
when she discounted the opinion of Dr. Jones because the ALJ
provided legally sufficient reasons supported by substantial
evidence in the record for doing so.

## III. The ALJ did not err at Step Five when she concluded Plaintiff could perform other work in the national economy.

Plaintiff contends the ALJ erred at Step Five when she
failed to provide legally sufficient reasons for her conclusion
that Plaintiff could perform other work in the national economy.

### A.   Standards

As noted, if the ALJ reaches Step Five, she must

determine whether the claimant is able to do other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). *See also Keyser*, 648 F.3d at 724-25. Here the burden shifts to the ALJ to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The ALJ may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines (or the grids) set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the ALJ meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1).

### B. Analysis

Plaintiff contends the ALJ found Plaintiff was limited to sedentary work based on the ALJ's following statement when she summarized Plaintiff's activities:

> Thus, while I acknowledge that [Plaintiff's] symptoms reasonably limit her to the range of sedentary work, as articulated above, I find that the record justifies no additional restrictions.

Tr. 22. Plaintiff asserts the ALJ acknowledged Plaintiff's symptoms reasonably limited her to "sedentary" work, but the ALJ failed to ask the VE to consider whether a person limited to sedentary work could perform Plaintiff's past work or other work in the national economy.

The Commissioner argues the ALJ's use of the word "sedentary" is merely a "scrivener's error" because the ALJ clearly referenced her own evaluation of Plaintiff's RFC, which expressly limited Plaintiff to "light work."  Tr. 19.  At the hearing the ALJ specifically asked the VE to consider limitations consistent with "light work" when determining whether Plaintiff could perform her past work or other work that existed in the national economy.  Tr. 53-55.  As noted, in her decision the ALJ assessed Plaintiff with the RFC to perform "light work" and later stated:

> If the [Plaintiff] had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21.  However, the [Plaintiff's] ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations.  To determine the extent to which these limitations erode the unskilled light occupational base, I asked the vocational expert whether jobs exists in the national economy for an individual with [Plaintiff's RFC.]

Tr. 25.

Based on this record the Court concludes the ALJ assessed Plaintiff with the RFC to perform "light work;" did not find Plaintiff had the capacity to perform only "sedentary" work"; and, therefore, the ALJ did not err at Step Five when she posed a hypothetical to the VE that referenced Plaintiff's RFC,

which included only limitations for "light work."

## **CONCLUSION**

For these reasons, the Court **AFFRIMS** the decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 12th day of July, 2021.

/s/ Anna J. Brown
_____
ANNA J. BROWN
United States Senior District Judge